IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MACE V. MACE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JERRY E. MACE, APPELLEE,

V.

STACIE D. MACE, APPELLANT.

Filed June 20, 2017.    No. A-16-398.

Appeal from the District Court for Burt County: JOHN E. SAMSON, Judge. Affirmed.

Nicholas E. Wurth, of Law Offices of Nicholas E. Worth, P.C., for appellant.

Francis W. Barron III, Burt County Attorney, for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Stacie D. Mace appeals from an order of the district court for Burt County that found her in contempt of court for failure to pay child support. We affirm.

## BACKGROUND

On January 4, 2013, a decree was entered dissolving the marriage between Stacie and Jerry E. Mace. They were awarded joint legal custody of their two children, with Jerry receiving primary physical custody. Stacie was ordered to pay $50 per month in child support. Her last payment towards child support occurred in February 2015.

On July 2, 2015, the Burt County Attorney (the State) filed an "Affidavit and Application for Order to Show Cause," alleging that Stacie was more than one month delinquent in her court-ordered child support payments. The court issued an order to show cause on the same day,

directing Stacie to appear on August 13 and show cause why she should not be held in contempt for failing to pay child support as previously ordered.

After two continuances (one filed by each party), the district court held the contempt hearing on February 11, 2016. The State offered into evidence the decree of dissolution, Stacie's financial affidavit, a certified copy of Stacie's child support payment history from the Department of Health and Human Services, and some of Stacie's medical records. Exhibit 3, the certified child support payment history, showed that Stacie's outstanding child support balance was $707.70 as of February 8. Her last payment ($247.39) was made on February 2, 2015. From commencement of her obligation in January 2013 through August 2014, Stacie had periods of fairly regular payments interspersed with months of no payments. From September 2014 until the last payment in February 2015, Stacie made no child support payments at all. Stacie testified that she was able to make payments until February 2015 because she was "working job-to-job that would hire [her] and [she] would save and save." She claimed to have lived in her truck to make sure "[her] kids got their money," but "[she] can't do it no more."

Stacie testified that she had been unemployed since 2014, but that she had since applied for positions at Walmart, Bomgaars, and Baker's. She received food stamps and lived with her parents. Stacie helped her parents on their farm, doing "odds and ends," mowing the lawn, and gardening. Her financial affidavit, dated August 13, 2015, showed monthly income of $100 from her parents "when work on Farm," and "Other" income (no amount specified) from her boyfriend for housing, gas, and food. When asked if her parents paid her "in cash," Stacie responded, "No, I was taking that as my cigarettes." She explained that her parents or her boyfriend would purchase cigarettes for her at the rate of approximately one pack every two days.

The following exchange took place between the State and Stacie:

Q [by the State]: Did you ever ask [your parents] instead of giving me cigarettes, give me money so that I can pay my child support?

A: No. It's not their job.

Q: It's your job to pay child support?

A: Yes, it is. They're my children.

Q: Okay. The thought never crossed your mind to ask for money instead of cigarettes in compensation?

A: No, they brought it up to me.

Upon further questioning by the court about the $100 in income on her financial affidavit, Stacie agreed that it was what she determined to be the value of the cigarettes she received. Stacie's affidavit also identified her assets to include a vehicle worth $1,000, which she testified she did not drive. She also identified an asset of $1,000 in jewelry.

Stacie presented evidence of her various mental health problems. She offered a psychological evaluation, dated November 30, 2015, conducted by Dr. Linda Hunter, a licensed clinical psychologist. The evaluation stated that "Stacie was informed the results of this evaluation would be used in a written report to the Disability Determination Section of the Nebraska Department of Education," and that "nothing discussed in the evaluation process would be confidential." In the evaluation, Dr. Hunter noted Stacie had been attending psychotherapy with

her since September 2015, and that Stacie had "many psychological problems at this time. She appears to be angry and alienated, and she tends to act out impulsively and unpredictabl[y]." Dr. Hunter also noted that individuals with psychological profiles like Stacie "have a long history of deviant behavior including poor achievement, poor work history, and problems with authority." Dr. Hunter used the Minnesota Multiphasic Personality Inventory-2 to diagnose Stacie with "Major Depressive Disorder, Recurrent, Moderate." Dr. Hunter concluded that it was "highly unlikely that Stacie could obtain and sustain gainful employment."

Stacie testified that she hired a lawyer to obtain benefits for her "[m]ental disability." If approved for disability benefits, she said she would first pay her child support obligations. She also said that she would pay child support "[i]n a heartbeat, like I always have, if I was able."

At the conclusion of the hearing, the district court stated that Stacie had "serious mental health or physical health issues that preclude [her] from being gainfully employed on a full-time basis." However, the court nevertheless found that the State had proved by clear and convincing evidence that Stacie was "in willful and intentional contempt." The court addressed Stacie's testimony that she received cigarettes from her parents rather than cash, and concluded that her statement that her parents "brought it up" meant that she had an option to get something other than cigarettes. The court discussed Stacie's affidavit which represented that she received $100 a month when working on her parents' farm, which the court understood to mean Stacie received that value in cigarettes. Considering that her child support obligation was only $600 per year, the court had "an issue with [Stacie] taking in-kind cigarettes over paying child support." Additionally, the court addressed Stacie's assets: the vehicle worth about $1,000 that Stacie said she was not using, and $1,000 in jewelry. The court summarized:

> [Y]ou have an asset that could be liquidated that you valued at a thousand dollars and jewelry at a thousand dollars, and you have cigarettes that you're choosing to take over paying any amount on child support, even $10 a month, you paid zero, zero, and you have the ability to pay something, therefore, I find you in willful contempt.

The district court scheduled sentencing for March 17, 2016, and told Stacie that it would be interested to see if she had a plan to pay any money on the child support. At the March 17 hearing, the State offered an updated child support payment history report which showed Stacie's outstanding child support balance to be $759.18 as of that day. The State indicated there was "an agreed-upon sentence of ten days with a purge amount of a hundred dollars." Stacie offered no additional evidence, however, her attorney argued that Stacie was unemployable, and that she had looked into selling her vehicle but no one had offered to buy it from her. Stacie's counsel also represented that Stacie had quit smoking and that she "now receives no income from her parents in any form." Her counsel argued that this was "a situation where tragically she'll be going to jail," and asked the court to "set a minimum of a sentence as it deems appropriate." When Stacie was asked if she had anything further to say, she replied, "I'm not doing this on purpose. I need help and there's nothing I can do about it." The court again found Stacie to be in willful contempt of the order of support, noting that it was a difficult situation and that the "arrearage is not huge," but that "not even $5 payments [were] made on it at any time. Nothing."

In an order filed on March 18, 2016, the district court sentenced Stacie to 5 days in the Burt County Jail, but the sentence was deferred so long as she made timely purge plan payments of $75 per month ($50 for current support and $25 toward the delinquency). Payment had to be made by April 18 and by the 18th day of each subsequent month. If she failed to pay as ordered, she was to report the Burt County Jail. Stacie timely appealed.

ASSIGNMENTS OF ERROR

Stacie's brief does not contain a separate "assignments of error" section. Under Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014), a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court. See *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Headings in the argument section of a brief do not satisfy the requirements of § 2-109(D)(1). *In re Interest of Samantha L. & Jasmine L., supra*. Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L., supra*.

STANDARD OF REVIEW

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Samantha L. & Jasmine L., supra*.

ANALYSIS

Stacie argues that she "clearly rebutted the presumption that she was in willful contempt by establishing that her failure to pay was directly related to her inability to hold a job due to her mental health issues." Brief for appellant at 13. However, the district court was not persuaded by that evidence since Stacie was able to work for her parents on their farm and chose to receive cigarettes in lieu of wages for her efforts. The court acknowledged Stacie had "serious mental health or physical health issues that preclude [her] from being gainfully employed on a full-time basis." But the court also pointed out her unwillingness to pay any amount at all towards her child support obligation at any time; "not even $5 payments [were] made on it at any time. Nothing."

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. *Id.* Relevant to this case, Neb. Rev. Stat. § 42-358(3) (Reissue 2016) states that "[a] rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent."

The State put into evidence a certified copy of Stacie's child support payment history (exhibit 3) showing that as of February 8, 2016, she had an outstanding child support balance of

$707.70. Because the State made a prima facie showing that Stacie's child support obligation was delinquent, there was a rebuttable presumption of contempt. The burden then shifted to Stacie to produce evidence rebutting the statutory presumption.

Stacie was aware that she was required to pay her child support as evidenced by her testimony on direct examination. When asked by the State if it was her job to pay the child support, Stacie responded: "Yes, it is. They are my children." However, she asserts that she was unable to pay because her mental health issues affected her ability to work. She points to Dr. Hunter's November 2015 conclusion that she was unemployable because of an "unusual number" of psychological symptoms. Stacie thought she was last employed in 2014 when she took care of mentally handicapped adults for a few months, but "[t]hey were going out of business and [she] couldn't catch on . . . [to] the paperwork and the computer and couldn't pass the test to give them their tube feedings." Stacie said she was not fired; rather it was "mutual." She explained that "they can't waste more of their time to teach me stuff that I should already have been catching on, so it's not working out. It's mutual. I'm not going to sit there and argue for something that's true." And although she submitted applications at Bomgaars, Walmart, and Baker's "last year," she never provided any other details about what happened since submitting those applications. However, Stacie did testify that she wished she could work. She believed she had a "98 percent chance of winning" disability, and she intended to use those funds to pay her child support obligation.

Stacie testified that she was able to make payments until February 2015 because she was "working job-to-job that would hire [her] and [she] would save and save." She claimed to have lived in her truck to make sure "[her] kids got their money," but "[she] can't do it no more." She said "employers would tell [her] they're not hiring a babysitter," because "if it's not a daily routine," she could not remember what she was doing and the employer would get frustrated because she could not "catch on." Stacie said that she lives on food stamps and the generosity of her parents and friends. She had a cellular phone, but said it belonged to her boyfriend. Stacie received cigarettes for helping with chores on the family farm, and her argument to the court was that there was no clear evidence establishing that she was able to receive cash in lieu of cigarettes. "The paltry evidence indicating that she 'may' have been able to obtain an unknown amount of money from her parents in lieu of the cigarettes they were giving her simply does not establish that she was in willful contempt of the child support order." Brief for appellant at 11.

Finally, Stacie argues that "[t]he court's further finding that [Stacie's] failure to sell her vehicle - of unknown condition or value - was tantamount to refusing to pay child support[,] is also in error." Brief for appellant at 11-12. Stacie had a car worth $1,000 that, according to her own testimony, she did not drive. She also declared jewelry assets worth $1,000 on her financial affidavit. There is no evidence that she made any attempt to sell these assets before the contempt or sentencing proceedings. She claims "[t]he logic that [she] must purge herself of every possession she has in order to pay child support or be held in willful contempt is simply untenable and cannot stand." *Id*. at 15. She cites no authority for this proposition.

The State argues that the district court did not err in finding Stacie in contempt because Stacie worked for her parents and received compensation in cigarettes, she did not demonstrate physical disability preventing her from working elsewhere, and because she owned assets that she did not exhaust to comply with the child support obligation.

The evidence shows that Stacie knew she was required to pay her child support, yet she chose to receive cigarettes in lieu of wages when working for her parents. She also had assets she could have sold to help meet her child support obligation, but she offered no evidence of any attempts to sell those assets. Her attorney's representation to the court that Stacie tried to sell her car is not evidence. Further, she offered no evidence as to why she could not make even a small payment on her child support obligation when it was clear she could work to some degree (lawn mowing, gardening, general household chores), albeit not in a sustained full-time capacity. Stacie offered no evidence of any attempt to seek even minimal employment doing tasks similar to those she did for her parents, other than to say she had submitted job applications to three stores. As our Supreme Court has noted, the support of one's children is a fundamental obligation which takes precedence over almost everything else. *State v. Reuter*, 216 Neb. 325, 343 N.W.2d 907 (1984). Therefore, we find no error in the district court's decision finding Stacie in contempt of court for failing to pay child support as ordered.

Stacie also contends that the district court erred in sentencing her to jail. She claims that she did not have the ability to make purge plan payments and therefore her sentence was "tantamount to a criminal jail sanction." Brief for appellant at 18. It is true that when a purge order involves payment of money, the sum required to purge oneself of contempt must be within the contemnor's present ability to pay, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). It is the ability to comply with a contempt order that marks a dividing line between civil and criminal contempt. *Id.* In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id.* A present inability to comply with a contempt order is a defense, not necessarily to contempt, but to incarceration. *Id.*

It is the contemnor who has the burden to assert and prove the inability to comply with the contempt order to avoid incarceration or to purge himself or herself of contempt. *Sickler, supra.* A contemnor may defend against incarceration under a civil contempt order, but only upon a showing of such inability by a preponderance of the evidence; that showing entails attempts to exhaust all resources and assets or borrow sufficient funds and the inability to thereby secure the funds to comply with the purge order. *Id.* The burden of both production and persuasion is on the contemnor. *Id.* The contemnor must be afforded only the opportunity, before being incarcerated, to demonstrate the inability to comply. *Id.*

Based on the evidence and reasons already discussed, Stacie failed to meet her burden of production and persuasion regarding her claimed inability to pay. As set forth in *Sickler*, *supra*, to show an inability to pay by a preponderance of the evidence, a contemnor must demonstrate an attempt to exhaust all resources and assets or to borrow sufficient funds, and show the inability to secure the funds necessary to comply with the purge order. No such evidence was offered in this case. The district court implemented a reasonable purge plan of $75 per month, which consisted of the $50 per month for current child support, plus $25 per month to be applied towards arrearages. Considering Stacie's self-reported income of $100 per month for work performed on her parents' farm, along with her assets that she valued to be worth $2,000, the court did not commit plain error in creating this purge plan and imposing incarceration upon noncompliance.

Stacie has the ability to obtain sufficient funds to meet the purge plan requirements and avoid incarceration. In other words, Stacie does have the keys to her jail cell. See *Sickler*, *supra* (person must have the present ability to pay the purge amount; otherwise, that person does not have the keys to his or her jail cell and cannot be incarcerated).

## CONCLUSION

Finding no plain error, we affirm the district court's order.

AFFIRMED.